IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Jerrod Harris, individually and
on behalf of all others similarly
situated,

        Plaintiff,

v.

Accudata Holdings, Inc. d/b/a
Accudata America
c/o Resident Agent
Denise Abbatista
4210 Metro Parkway Suite 300
Fort Meyers FL 33916-9409

        Defendant.

**Case No.**

**JURY TRIAL DEMANDED**

## **CLASS ACTION COMPLAINT**

1. Plaintiff Jerrod Harris brings this action to secure redress for a course of conduct that included the accessing of plaintiff's private credit information without consent or any lawful reason, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

2. A flyer in substantially the same form as Exhibit 1 was sent to the Plaintiff and thousands of other persons.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 1681p. Venue in this District is proper in that the mailing and other acts

1

that gave rise to the violations of law complained of were conducted, directed to and received by plaintiff in this District.

## PARTIES

4. Plaintiff is Jerrod Harris an individual, who resides at 1647 Normal Ave., Baltimore, MD 21213.

5. Defendant in this action is Accudata Holdings, Inc. d/b/a Accudata America, ("Accudata")located in Ft. Meyers, FL.

6. The flyer, Exhibit 1, states that it is issued by "Auto Credit of America"; however, the Plaintiff has learned that this entity is a fictious entity.

7. The flyer also references "Direct Lending Source", which is a trade name of Virtual Lending, LLC. Virtual Lending has provided an affidavit that it had no involvement in the transaction.

8. The Defendant has regularly transacted business in Maryland and participated in the wrongful conduct complained of herein and caused injury to the Plaintiff and other putative class members, residents of Maryland.

## FACTS

9. Defendant Accudata solicits parties to sell them names and other information derived from consumer reports.

10. Defendant arranges for the delivery of names through the use of a direct link on a web site arranged between Name Seeker, Inc. ("NameSeeker") and Choicepoint Services, Inc. ("ChoicePoint")

11. Defendant sold names and other information obtained from consumer reports through Name Seeker and ChoicePoint to an entity known as DMMI Promotions,

Inc. ("DMMI").

12. DMMI in turn sold the names and other information to various car dealers.

13. Among the names and information from consumer reports sold by Accudata to DMMI was the name of the Plaintiff.

14. The only purpose of obtaining the name and other information from consumer reports by Accudata and DMMI was to increase traffic at the auto dealers and was not to offer credit through any entity.

15. Plaintiff's name and other information from a consumer report was delivered by ChoicePoint through Order No. 050425105883 on or about April 25, 2005.

16. Plaintiff received a flyer similar to the flyer attached as Exhibit 1.

17. Plaintiff had not authorized anyone to access his credit information or consumer report.

18. The purpose of increasing traffic for car dealers is not a permissible reason for anyone to access information from plaintiff's consumer report without his consent.

19. Accudata never requested or received any certification by DMMI before delivering the plaintiff's names and other information from consumer reports to DMMI.

20. Accudata did not request any certification since it knew that DMMI was obtaining the information solely to be sold to car dealers to increase their traffic.

21. Accudata never made any investigation, reasonable or otherwise, to verify the identity or certifications to be made by DMMI for it to obtain and use the consumer reports of the plaintiff and others.

22. Accudata knew that there was no permissible purpose to obtain or use the credit information or consumer report.

## COUNT I - FAIR CREDIT REPORTING ACT
## AGAINST ALL DEFENDANTS

23. Plaintiff incorporates the foregoing paragraphs.

24. The FCRA, 15 U.S.C. § 1681a(d), defines "consumer report" as follows:

   **The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--**

   **(a) credit or insurance to be used primarily for personal, family, or household purposes; . . .**

25. The FCRA, 15 U.S.C. § 1681b, provides it is permissible to obtain a consumer report or information from it only with the written consent of the consumer or for certain permissible purposes, which insofar as pertinent are the extension of credit to, or review or collection of an account of, the consumer, employment purposes, the underwriting of insurance, or in connection with a business transaction that is initiated by the consumer. 15 USC § 1681b (a)(2) and (a)(3).

26. Defendant obtained, used or sold information from a consumer report relating to Plaintiff and every other person to whom DMMI sent out a flyer.

27. The only purpose of the sale of this information to DMMI was for DMMI to sell it to auto dealers so that the auto dealer could increase their sales traffic.

28. The FCRA, 15 U.S.C. § 1681e (e)(2) imposes obligations on resellers of

consumer reporting:

**(2) Responsibilities of procurers for resale. A person who procures a consumer report for purposes of reselling the report (or any information in the report) shall—**
    **(A) establish and comply with reasonable procedures designed to ensure that the report (or information) is resold by the person only for a purpose for which the report may be furnished under section 604 [15 USCS § 1681b], including by requiring that each person to which the report (or information) is resold and that resells or provides the report (or information) to any other person—**
        **(i) identifies each end user of the resold report (or information);**
        **(ii) certifies each purpose for which the report (or information) will be used; and**
        **(iii) certifies that the report (or information) will be used for no other purpose; and**
    **(B) before reselling the report, make reasonable efforts to verify the identifications and certifications made under subparagraph (A).**

29. The defendant, Accudata obtained information from consumer reports for the purpose of reselling the report to DMMI.

30. The Defendant Accudata violated the FCRA by reselling information from consumer reports without a permissible purpose or without identifying the end user.

31. The Defendant Accudata resold information obtained from credit reporting agencies to DMMI.

32. Accudata did not comply with the requirements of the FCRA.

33. Accudata did not establish any reasonable procedures that the information was resold only for an allowed purpose.

34. Accudata did not have any reasonable procedures to identify the end user.

35. Accudata did not require or obtain any certification from DMMI.

36. Accudata, having not obtained certifications or identifications, could not verify

the identifications or certifications that it was to obtain.

37. The FCRA, 15 U.S.C. § 1681n, provides:

   **§1681n. Civil liability for willful noncompliance**

   **(a) In general. Any person who willfully fails to comply with any requirement imposed under this title [15 USC §§ 1681 et seq.] with respect to any consumer is liable to that consumer in an amount equal to the sum of -**

   **(1) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or**

   **(2) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;**

   **(3) such amount of punitive damages as the court may allow; and**

   **(4) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court....**

38. The Defendant Accudata knew that it was reselling, using or obtaining information from consumer reports.

39. The Defendant knew or should have known that the use of information from consumer reports could not be used to increase sales traffic for auto dealers.

40. The Defendant acted willfully in violating the FCRA when they resold, used, obtained or supplied information from the consumer reports of the plaintiff and others as set forth above.

## CLASS ALLEGATIONS

41. This claim is brought on behalf of a class, consisting of all persons that Accudata resold information from consumer reports to DMMI on or after a date two years prior to February, 2007. The class claims are based on the FCRA.

42. The class is so numerous that joinder of all members is impracticable.

43. Defendant has resold, used or obtained as well as supplied information from credit reports for at least 293,000 persons without a permissible purpose and without identifying the end user.

44. There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class member.

45. The predominant common question as to the claim against defendant is whether the Defendant violated the FCRA when it resold, obtained, used or supplied information from consumer reports without

   a. permissible purpose; or

   b. requesting certifications as required by the FCRA; or

   c. receiving the certifications as required by the FCRA; or

   d. providing the identity of the end user or requesting it; or

   e. making a reasonable investigation as to the identification or certifications required.

46. The Plaintiff's claims are typical of the claims of the class members. All are based on the same legal and factual issues.

47. Plaintiff will fairly and adequately represent the members of the class.

48. Plaintiff is disturbed by the unlawful reselling of information from consumer

reports by the Defendant.

49. Plaintiff has retained counsel experienced in the prosecution of similar claims.

50. A class action is superior for the fair and efficient prosecution of this litigation. Class-wide liability is essential to cause defendant to stop its improper conduct. Many class members may be unaware that they have been victims of illegal conduct.

WHEREFORE, plaintiff requests that the Court enter judgment in his favor and in favor of the class for:

    a.     $1,000 per person

    b.     Punitive damages

    c.     Attorney's fees, litigation expenses and costs of suit;

    d.     Such other or further relief as is appropriate.

Respectfully submitted,

_/s/_____
Scott C. Borison
Bar No. 22576
Janet Legg
Bar No. 15552
Legg Law Firm, LLC.
5500 Buckeystown Pike
Frederick MD 21703
(301) 620-1016
(301) 620-1018 fax

__/s/_____
Jane Santoni

Federal Bar No. 05303
Williams, Santoni & Clasing, L.L.P.
401 Washington Ave, Suite 200
Towson, Maryland 21204
(410) 938-8666

__/s/_____
Peter S. Lubin
Federal Bar No. 27951
DiTommaso & Lubin P.C.
17 W 220 22nd St
Suite 200
Oakbrook Terrace, IL  60181
(630) 333-0000

Attorneys for Plaintiff